# IN THE COURT OF APPEALS OF IOWA

No. 20-1653
Filed October 19, 2022


**FRANCISCO VILLA MAGANA,**
　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　Respondent-Appellee.
_____


　　Appeal from the Iowa District Court for Marshall County, Bethany J. Currie,

Judge.


　　A postconviction-relief applicant appeals the dismissal of his actual-

innocence claim. **REVERSED AND REMANDED.**


　　John L. Dirks of Dirks Law Firm, Nevada, for appellant.

　　Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee State.


　　Considered by Bower, C.J., and Tabor and Chicchelly, JJ.

**TABOR, Judge.**

At age sixteen, Francisco Villa Magana pleaded guilty to sexual abuse in the second degree as a youthful offender. That was March 1999. Eighteen years later, Villa sought postconviction relief (PCR), alleging "[s]ome witnesses have changed their story since I pleaded guilty." The district court dismissed that claim as time barred. On appeal, Villa argues that he should have had a chance to prove that his freestanding claim of actual innocence fell within the exception to the statute of limitations under Iowa Code section 822.3 (2017). Because the court did not comply with the requirements of section 822.6(2) in dismissing Villa's claims, we reverse and remand for further proceedings.

## I. Facts and Prior Proceedings

In February 1999, the State charged Villa with sexual abuse in the second degree, a class "B" felony, in violation of Iowa Code sections 709.1 and 709.3 (1997).[1] The trial information alleged that Villa, then fifteen years old, aided and abetted a sex act with J.P., a fourteen-year-old girl, by force or against her will along with two other teenaged boys. Villa entered a plea agreement in which he would transfer to adult court and be treated as a youthful offender. At the plea hearing, Villa admitted that he and two friends were in the basement with J.P., urging her to participate in sex acts, but she declined. Villa described how the three boys then forced her to have sex as she said "this is not right." After his guilty plea, the district court deferred sentence and placed Villa on youthful offender status.

---

[1] The case was numbered FECR047456.

Fast forward to 2010. As a convicted sex offender, Villa pleaded guilty to failure to register.[2] He received a two-year suspended sentence. The district court revoked his probation a year later, and he was sent to prison. Then, in 2015, Villa challenged his obligation to register as a sex offender as an illegal sentence, claiming it constituted cruel and unusual punishment. The district court denied the motion, and our court affirmed. *See State v. Villa*, No. 16-0186, 2017 WL 108467, at *1 (Iowa Ct. App. Jan. 11, 2017).

Villa commenced this PCR action, without counsel, in 2017.[3] He included these grounds for relief:

> I was told that pleading guilty would not cause me a problem for immigration. After my postconviction application was dismissed, I was scheduled to be released and I was taken into custody by immigration officials for purpose of deportation. Some witnesses have changed their stories since I pleaded guilty. Some of my charges are violations of sex offender registry. I should not have been put on the registry because the procedures in juvenile court were not followed.

Two years later, counsel amended the application to raise a count of "freestanding actual innocence." The application alleged: "The complaining witness in FECR047465 has changed her story to a story which is consistent with [Villa's] innocence."

The State moved to dismiss, contending Villa's PCR application was untimely.[4] *See* Iowa Code § 822.3 (setting a three-year statute of limitations). The

---

[2] The case was numbered AGCR073951.

[3] Villa was confined at the Hardin County jail on an immigration hold when he filed the application. He had been removed to Mexico by the time that his counsel filed an amended and substituted application in November 2019.

[4] The State's filing was captioned "Motion for Summary Disposition/Motion to Dismiss." And it discussed the standards for both types of dispositions short of reaching the merits.

State argued that Villa was not alleging any ground of fact or law that could not have been raised within the applicable period. According to the State, Villa failed to carry his burden to prove an exception to the statute of limitations, even for his claim of actual innocence.

Villa's counsel twice asked to extend the deadline for responding to the State's motion to dismiss. In those requests, counsel asserted: "The undersigned has a key witness who was involved in one of the criminal cases on which the Applicant seeks postconviction relief. The undersigned has not been able to get this witness to respond to him. . . . The undersigned believes this witness will recant prior statements which were material to the Applicant's convictions."

In resisting the State's motion, Villa asserted: "The victim in the first case has recanted her story and her subsequent statements are consistent with actual innocence with regard to that charge." Villa compared his situation to *Schmidt v. State*, 909 N.W.2d 778 (Iowa 2018) in which the court recognized a free-standing claim of actual innocence under the state constitution. Villa also expressed his desire "to depose the victim who has told [his] family members and friends that the story which supported the conviction is false." To that end, Villa asked to take her deposition at public expense. The district court approved that request for depositions in July 2020.

After several continuances, the court held a hearing in October 2020 to consider the State's motion to dismiss. Villa's counsel told the court that he had not yet conducted the depositions authorized three months earlier. Counsel noted difficulties posed by his client's removal to Mexico and "the COVID situation." Counsel asked the court to deny the State's motion and allow Villa to fully develop

the record. He expressed a desire to depose J.P. and Officer Sadie Weekley, who "indicated that she had information that was helpful" to Villa. Counsel described what still needed to be done:

> With regard to [J.P.'s] recantation to [Villa's] brother, that is something that creates a fact issue and [J.P.] can have a very brief and respectful deposition as to whether she's changed her story and what her story is and she can be done. And Mr. Villa can state . . . when he first became aware of that information and what efforts he made to follow up on it.

The State complained that Villa was making only "vague allegations about actual innocence." The State also warned that allowing him to depose J.P. would "result in harassment of victims and a lack of finality in the criminal justice system."

The district court sided with the State, questioning the timing of J.P.'s alleged recantation:

> [C]ounsel stated at the hearing that Mr. Villa Magana first learned of her recantation when he was released from prison in 2017, shortly before he filed the pending application for post-conviction relief. Counsel tried to reach out to the victim informally but she did not respond to him. He believes the only way he can determine her current story—whether consistent or inconsistent with Mr. Villa Magana's innocence—is to take her deposition in this case to develop a record for trial.

Then, despite earlier approving depositions at State expense, the court rebuffed the notion that Villa should be allowed to explore the possibility that J.P. was recanting her accusations against him:

> The Court believes Mr. Villa Magana is grasping at straws. He wants the Court to authorize him to question his victim over twenty-one years after the incident to determine whether her testimony is the same as it was in 1999. This is not a situation where the victim has signed an affidavit recanting her testimony or otherwise stepped forward voluntarily to provide a new statement.

In the end, the court "decline[d] to allow Mr. Villa Magana to re-traumatize his victim" by deposing her on events that happened two decades earlier. In the court's view, "Cases need finality and victims need finality." So the court determined Villa failed to prove an exception to the statute of limitations at section 822.3.

Villa appeals, asking this court to reverse and remand for a hearing to determine whether he can meet the burden of showing his actual innocence.

## II.     Scope and Standards of Review

We review the district court's ruling on the State's motion to dismiss for correction of legal error. *Thongvanh v. State*, 938 N.W.2d 2, 8 (Iowa 2020). We review any constitutional dimensions of Villa's claim de novo. *See Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018).

## III.    Analysis

This case calls us to examine the intersection between the State's reliance on the statute of limitations and Villa's undeveloped claim of actual innocence. Both sides say the other failed to meet its burden of proof. To settle this dispute, we start with the key statute.

The PCR chapter sets its own time limitation: "[A]pplications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3. But that provision has a built-in escape clause: "this limitation does not apply to a

ground of fact or law that could not have been raised within the applicable time period." *Id.*[5]

Generally, a party raises the statute of limitations as an affirmative defense by a responsive pleading. *Cornell v. State*, 529 N.W.2d 606, 609–10 (Iowa Ct. App. 1994). But it may be invoked through a motion to dismiss when "the uncontroverted facts in appellant's application show that the limitation period had passed." *Davis v. State*, 443 N.W.2d 707, 708 (Iowa 1989). The State took that latter approach. In its motion to dismiss, the State established that the three-year window for challenging Villa's sexual abuse conviction closed in March 2002 and the time for contesting the registration violation expired in April 2013. Thus, the State urged that Villa's claim for relief was barred when he commenced his PCR action in 2017.

The burden then shifted to Villa to show he could not have raised the new ground of fact, J.P.'s recantation, within the applicable time periods. *See Schmidt*, 909 N.W.2d at 798 (holding that freestanding claim of actual innocence was not barred by the three-year statute of limitations). "A party claiming an exception to a normal limitations period must plead and prove the exception." *Cornell*, 529 N.W.2d at 610. In his self-represented pleading, Villa mentioned the new ground of fact: "Some witnesses have changed their stories since I pleaded guilty." But he did not contend that he could not have raised that fact by March 2002. The amended application filed by counsel *did* assert that Villa "only found out about the

---

[5] That provision also advises: "Facts within the personal knowledge of the applicant and the authenticity of all documents and exhibits included in or attached to the application must be sworn to affirmatively as true and correct." *Id.*

supposed victim recanting her statement after he was incarcerated" for failure to comply with the sex offender registry.

So we call the question: Did Villa meet his burden to plead and prove an exception to the three-year statute of limitations? The State argues no. It contrasts Villa's "naked assertions in the pleadings" that J.P. had recanted with *Schmidt*, in which the application included the victim's affidavit confirming that it would have been impossible for Schmidt to have raised his claim within the statute of limitations. *See* 909 N.W.2d at 783. But in *Schmidt*, the district court did not rule on the statute of limitations. *Id.* The supreme court held that section 822.3 did not bar Schmidt's freestanding claim of actual innocence because the victim's recantation was unavailable to him within three years of his conviction. *Id.* at 799. Unlike this case, *Schmidt* was not addressing a motion to dismiss and did not hold that the victim's affidavit was essential to meet the exception to the statute of limitations. Still, the State contends that Villa needed to present more than "reiterations of his self-serving assertions" such as "an affidavit from the witnesses he alleged existed—his brother, officer Weekley, or his victim."

In a similar take, Villa concedes there's "not a plethora of evidence" supporting the victim's alleged recantation. But he attributes that problem to the premature dismissal, foreclosing his chance to question her. He cites *Manning v. State* for the proposition that the goal of section 822.6(3) "is to provide a method of disposition *once the case has been fully developed by both sides*, but before an actual trial." 654 N.W.2d 555, 559 (Iowa 2002) (quoting *Hines v. State*, 288 N.W.2d 344, 346 (Iowa 1980)). And Villa insists it is the State that failed to carry its burden to prove the nonexistence of a material fact necessary for summary disposition.

But the State argues that *Manning* is not the measure here. The State cites *Ramirez v. State* to showcase the difference between a dismissal under section 822.3 and summary disposition under section 822.6(3). *See* No. 13-1847, 2015 WL 4936386, at *1–2 (Iowa Ct. App. Aug. 19, 2015). In *Ramirez*, our court described the two methods under section 822.6 for dismissing a PCR action without reaching the merits. *Id.*

Under the first method, the court may dismiss if it is satisfied based on the application, the answer or motion, and the record, that "the applicant is not entitled to postconviction relief and no purpose would be served by any further proceedings." *Id.* at *1 (quoting Iowa Code § 822.6(2)). Under that method, the court must "indicate to the parties its intention to dismiss the application and the reasons for dismissal." Iowa Code § 822.6(2). After that notice, the court must provide the applicant a chance to reply to the proposed dismissal. *Id.* Only then may the court dismiss the application. *Id.* "Disposition on the pleadings and record is not proper if a material issue of fact exists." *Id.*

Under the second method, the court may grant summary disposition "when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Iowa Code § 822.6(3). This method "allows for such disposition *on the motion of either party.*" *Manning*, 654 N.W.2d at 559.

It is unclear from the State's argument which method it believes the district court used to dismiss this case. On the one hand, if Villa's situation resembles *Ramirez*, then the ruling was not one of summary disposition under section

822.6(3) but fell under section 822.6(2).  *See* 2015 WL 4936386, at \*2.  On the other hand, if the summary judgment standards apply to the statute-of-limitations issue, as was the case in *Moon v. State*, 911 N.W.2d 137, 143 (Iowa 2018), then the State would retain the burden to show that no genuine issue of material fact exists as to whether Villa could have known about J.P.'s alleged recantation before the statute of limitations expired.[6]

In deciding the proper approach to reviewing this matter, we have two options.  First, we could treat the October 2020 hearing as considering dismissal on the pleadings under section 822.6(2).  In that event, all the well-pleaded allegations in Villa's applications and resistance would be considered as true.  *See Cornell*, 529 N.W.2d at 610;[7] *Davis*, 443 N.W.2d at 708 (allowing court to consider any resistance to the motion to dismiss "to determine existence of grounds that could fall within the exception of section 822.3").  To avoid dismissal under section 822.3, Villa had to sufficiently allege that he had "no opportunity" to raise the recantation claim before the limitations period expired.[8]  *Cornell*, 529 N.W.2d at 611.  In discussing the escape clause in section 822.3, *Cornell* observed: "We

---

[6] In *Moon*, the district court mistakenly conducted a merits analysis of a newly discovered evidence claim rather than applying the ground-of-fact standard under section 822.3.  *Id.* at 143.  To rectify that mistake, the supreme court considered whether a genuine issue of material fact existed as to whether Moon could have known about the contents of a witness affidavit before the end of the limitations period.  *Id.*

[7] *Cornell* cited *Franzen v. Deere and Co.*, 334 N.W.2d 730, 732 (Iowa 1983), which explained: "Our 'notice pleading' rule requires only a 'short and plain statement of the claim', not the pleading of facts."

[8] That allegation is essential because "*Schmidt* does not apply to overcome the statute of limitations where the evidence put forward to support a claim of actual innocence was available to the applicant or could have been discovered with due diligence within the limitations period."  *Quinn v. State*, 954 N.W.2d 75, 77 (Iowa Ct. App. 2020).

have never inquired into the strength or form of the evidence to support a claim in considering whether the claim could be raised, nor have we constructed any artificial barriers requiring evidence to be supported by affidavits." *Id.*

Second, we could view the district court proceedings under the standards for a summary judgment motion in section 822.6(3). When the court considers additional matters outside the pleadings, we may treat a motion to dismiss as a motion for summary judgment. *See Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 565 (Iowa 2018). In that event, as the moving party, the State would bear the burden of showing no genuine issue of material fact on the statute-of-limitations issue. *See Moon*, 911 N.W.2d at 144–45.

After reviewing the record, it is evident that we must follow the first approach. At the October 2020 proceedings, the district court did not consider any facts beyond the parties' pleadings. Based on those pleadings, the court decided that Villa's claims were time barred and dismissed them. *See Ramirez*, 2015 WL 4936386, at *2. So our task is to decide whether it was proper to dismiss Villa's claims as untimely under section 822.6(2).

Under that paragraph, the court had to notify the parties of its intent to dismiss and its reasons for doing so. Iowa Code § 822.6(2). We do not see that notification in the record. Granted, Villa knew that the State had moved to dismiss his application as untimely. But it was obvious from his counsel's arguments at the October 2020 hearing that he intended to develop the record by conducting depositions to show that he could not have raised the recantation issue within the statute of limitations. Villa's counsel noted that the court had approved depositions at state expense in July 2020, but explained "with the Covid situation I've not been

able to do any depositions since I believe March." Counsel argued: "Summary disposition is appropriate for a fully developed case. . . . [W]ith regard to a fully developed record, I would say that we are not there yet." In closing, counsel asked the court to find that there was "not enough record" to determine whether his actual innocence claim was time barred.

At the hearing, the prosecutor agreed summary judgment was only appropriate on a fully developed record but countered that Villa had not properly alleged in his petition that his claims "don't need to fall within the statute of limitations."

We disagree with the prosecutor on that second point. In his PCR pleadings, Villa claimed that J.P. changed her story since his guilty plea in 1999. True, he did not state that he had no chance to discover her recantation within three years of his conviction. But in his resistance to the State's motion to dismiss, Villa asserted that he had "pleaded the exception to the statute of limitations" and "provided allegations sufficient to avoid dismissal." In particular, he pointed to his claim that "he only found out about the supposed victim recanting her statement after he was incarcerated on the charges in this case."

The problem is that the district court did not accept those pleaded allegations as true. Rather, the court required proof of the recantation beyond Villa's sworn application: "This is not a situation where the victim has signed an affidavit recanting her testimony or otherwise stepped forward voluntarily to provide a new statement." That requirement was in error. Whether Villa has evidence to support his pleaded exception to the State's limitation defense is "a separate issue, but in ruling on [the State's] motion to dismiss the court should

have accepted as true the pleaded allegation." *See Franzen*, 334 N.W.2d at 732 (remanding so plaintiffs could "attempt to establish" exceptions to statute-of-limitations defense). While Villa's PCR application was "not a work of pleading art," it satisfied Iowa Rule of Civil Procedure 1.402(2)(a) and was sufficient to state a claim for an exception to section 822.3. *See Lamantia v. Sojka*, 298 N.W.2d 245, 248 (Iowa 1980).

Because the State's statute-of-limitations defense was controverted in Villa's application and resistance, judgment on the pleadings was not appropriate. Upon remand, Villa may seek to establish his actual-innocence exception to the time bar in section 822.3. As the State noted in its briefing, the PCR court already authorized depositions of J.P. at state expense. But we take no position on what evidence could avoid summary disposition under section 822.6(3) on his claim.

**REVERSED AND REMANDED.**